IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD A. CHICHAKLI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1546-N |
| | § | |
| ADAM SZUBIN, *et al.* | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Before the Court is Plaintiff Richard A. Chichakli's ("Chichakli") Motion for Summary Judgment [27] and the Motion to Dismiss and for Summary Judgment [12] filed by Defendants Adam Szubin, Henry Paulson, Jr., Condoleeza Rice, and the Office of Foreign Assets Control (collectively, "the Government"). For the reasons set forth below, the Court grants the Government's motion.

### I. ORIGINS OF THE CASE

In July of 2004, President Bush issued an Executive Order declaring a "national emergency" with respect to the unstable situation in Liberia, finding that it represented an unusual and extraordinary threat to the foreign policy of the United States. E.O. 13348, 69 Fed. Reg. 44885 (July 22, 2004). The Executive Order imposed economic sanctions – in the form of an asset freeze – on certain individuals deemed to contribute to the situation in Liberia, including Viktor Bout, who is widely regarded as the head of an international arms-trafficking network active in many of the world's conflict regions. *Id.,* Annex. Additionally,

ORDER – PAGE 1

Executive Order 13348 authorized the Treasury Department, in consultation with the Secretary of State, to freeze the assets of other individuals whom the Secretary found to be acting or purporting to act on behalf of anyone listed in the Annex to the Order. The Department of Treasury's Office of Foreign Assets Control ("OFAC") undertook an investigation of Viktor Bout's network in order to implement the Executive Order. As the conclusion of this investigation, OFAC designated thirty entities and four individuals based on their ties to and/or actions on behalf of Viktor Bout. This list of additional individuals included Chichakli, who OFAC identified as Viktor Bout's chief financial manager.

Upon his designation, Chichakli was personally served with a Blocking Notice, informing him that OFAC had identified him as a Specially Designated National pursuant to Executive Order 13348. The notice informed Chichakli of the following: (1) his assets had been blocked and he could not deal with those assets without prior authorization from OFAC; (2) OFAC had licensing authority to help ameliorate the effects of the designation; and (3) he may seek reconsideration of his designation. Along with the notice, OFAC provided Chichakli with instructions for applying for a license, as well as the pertinent regulation governing reconsideration requests.

Shortly after OFAC informed him of his designation, Chichakli sought reconsideration of his designation and requested a copy of the administrative record underlying that designation. The Government complied with this request and provided Chichakli with the complete administrative record. Additionally, the Government informed Chichakli that he should submit to OFAC any evidence he wished OFAC to consider as part of the

reconsideration process. Although Chichakli and his attorney provided letters in support of Chichakli's request for reconsideration, Chichakli failed to supply any substantial evidence in support of his claims. When asked if he wished to supply any evidence to support his reconsideration request, Chichakli informed OFAC that he had nothing else to provide. OFAC denied Chichakli's request and upheld his designation.

Chichakli then filed the instant action challenging his designation on both constitutional and statutory grounds. First, Chichakli asserts that the Government has violated his due process rights because (1) it did not provide him with notice that his assets would be frozen, and (2) it has not provided him with any evidence supporting his designation or an opportunity to provide evidence to rebut his designation. Second, Chichakli asserts that his designation and the subsequent freezing of his assets constitutes a taking without just compensation in violation of the Fifth Amendment. Third, Chichakli asserts that his designation pursuant to Executive Order 13348 is not valid because the situation in Liberia no longer constitutes a significant threat to the United States. Fourth, relying on the Administrative Procedure Act, Chichakli claims that his designation was arbitrary, capricious, and an abuse of discretion. The Government moves for summary judgment on all of Chichakli's claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to summary

judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. *Id.* at 252. In ruling on a motion for summary judgment, the Court must accept the nonmoving party's evidence and draw all justifiable inferences in its favor. *Id.* at 255.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324.

### III. CHICHAKLI'S DESIGNATION DID NOT VIOLATE DUE PROCESS

In his first cause of action, Chichakli asserts that his designation violates due process because (1) the Government failed to provide him with adequate notice prior to his designation and (2) the Government failed to provide him with evidence supporting his designation, failed to give him an opportunity to present evidence to rebut his designation,

and did not provide him an opportunity to be heard by a neutral decision-maker. Each of these claims fails on its merits.

### *A. Due Process Does Not Require Pre-Designation Notice*

The Fifth Amendment provides that no person may "be deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V. "The fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 48 (D.D.C. 2005) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1965)). The Due Process Clause generally requires the state to provide notice and an opportunity to be heard prior to depriving a person of his property interests; however, post-deprivation process may suffice in exigent circumstances. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("[W]here a State must act quickly, or where it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause.").

The Supreme Court has outlined what circumstances "present[] an 'extraordinary situation in which postponement of notice and [a] hearing until after seizure [does] not deny due process." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679–80 (1974). Under *Calero-Toledo*, the Government must demonstrate that: (1) the deprivation was necessary to secure an important government interest; (2) there has been a special need for prompt action; and (3) the party initiating the deprivation was a government official

responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. *Id.*

The Government has satisfied the requirements articulated by the Supreme Court in *Calero-Toledo*. First, President Bush has declared that the situation in Liberia poses a serious threat to the foreign policy of the United States; the Court is in no position to question that judgment. The Government has thus shown that it has a significant interest in incapacitating those responsible for the arms trafficking that has helped fuel the crisis in Liberia. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 76–77 (D.D.C. 2002) (citing President Clinton's finding in Executive Order 12947 "that the acts of violence committed by terrorists disrupting the Middle East peace process constituted an extraordinary threat to the United States" to conclude that the OFAC's designation of the plaintiff served an important government interest), *aff'd*, 333 F.3d 156, 163–64 (D.C. Cir. 2003) ("*HLF*"). Second, prompt action by the Government was necessary to protect against the transfer of assets subject to the sanctions imposed by the Executive Order. *See id.* ("Money is fungible, and any delay or pre-blocking notice would afford a designated entity the opportunity to transfer, spend, or conceal its assets, thereby making the [] sanctions program meaningless."); *Global Relief Found., Inc. v. O'Neill*, 207 F. Supp. 2d 779, 804 (N.D. Ill. 2002) ("Pre-deprivation notice would, in fact, be antithetical to the objectives of these sanctions programs . . . . Summary process in these circumstances simply maintains the status quo, protects against the transfer or dissipation os assets subject to the blocking order, and furthers the compelling government interest in promoting its declared national

security and foreign policy goals."), *aff'd*, 315 F.3d 748 (7th Cir. 2002) ("*GRF*"). Third, the Government acted pursuant to an Executive Order that sets forth the criteria by which the Treasury Department, in consultation with the Secretary of State, may designate additional individuals subject to the sanctions imposed by the Order. *See HLF*, 219 F. Supp. 2d at 77. Accordingly, the Court concludes that Chichakli was not entitled to pre-designation notice.

### *B. The Opportunity for Administrative Reconsideration Satisfies Due Process Requirements*

Chichakli also mounts a constitutional challenge against the post-designation process for administrative reconsideration, arguing that the Government failed to provide him with the evidence supporting his designation and an opportunity to provide evidence to rebut his designation. This claim also fails.

As previously indicated, the Government provided Chichakli with the complete administrative record underlying his designation and afforded him an opportunity to submit evidence to rebut that designation through the administrative reconsideration process. This is all that the Due Process Clause requires. *See HLF*, 333 F.3d at 164 ("Treasury provided [plaintiff] with the requisite notice and opportunity for response necessary to satisfy due process requirements . . . . [W]e do not require an agency to provide procedures which approximate a judicial trial . . . ."); *GRF*, 207 F. Supp. 2d at 804–805 (rejecting, under similar circumstances, a challenge to post-deprivation process where plaintiff was provided an opportunity to present evidence in support of request for administrative reconsideration).

Chichakli's assertion that he has not been afforded an opportunity to present evidence to a "neutral decision-maker" also lacks merit. As stated by another court, "the director of

ORDER – PAGE 7

OFAC is an appropriate person to consider administrative appeals." *Id.* at 805 ("[I]t is very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges . . ., and then to participate in the ensuing hearings.") (quoting *Withrow v. Larkin*, 421 U.S. 35, 56 (1975)).

### IV. BLOCKING CHICHAKLI'S ASSETS DOES NOT CONSTITUTE A TAKING

Chichakli next argues that the Government's actions in blocking his assets constitutes a taking without just compensation in violation of the Fifth Amendment. However, "blockings under Executive Orders are temporary deprivations that do not vest the assets in the Government." Therefore, as a matter of law, "blockings do not constitute takings within the meaning of the Fifth Amendment." *HLF*, 219 F. Supp. 2d at 78 (citing case law). The Court therefore grants the Government's motion to dismiss Chichakli's takings claim.

### V. CHICHAKLI'S CHALLENGE TO EXECUTIVE ORDER 13448 IS NOT JUSTICIABLE

Chichakli challenges his designation under Executive Order 13448 on the grounds that the situation in Liberia no longer constitutes an "unusual and extraordinary threat" to the foreign policy of the United States and his designation is therefore invalid. This claim is nonjusticiable. The Court therefore grants the Government's motion to dismiss with respect to this claim.

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan*

*Whaling Ass'n v. Amer. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).  Chichakli's claim raises such a controversy by asking the Court to make a policy determination regarding the nature of the threat posed by the conflict in Liberia.  However, "the conduct of foreign relations . . . 'is committed by the Constitution to the executive and legislative 'political' departments of the government.'"  *Dickson v. Ford*, 521 F.2d 234, 235 (5th Cir. 1975) (quoting *Oetjen v. Cent. Leather Co.*, 146 U.S. 297, 302, (1918)).  Thus, Chichakli's claim presents a nonjusticiable political question.  *See Baker v. Carr*, 369 U.S. 186, 217 (1962) ("Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department . . . ."); *Soudavar v. Bush,* 46 Fed. App'x 731, 2002 WL 1973431 (5th Cir. July 31, 2002) (affirming district court's dismissal because challenge to President's foreign policy constitutes a nonjusticiable political question); *United States v. Spawr Optical Research*, 685 F.2d 1076, 1080 (9th Cir. 1982) ("[C]ourts have not normally reviewed the essentially political questions surrounding the declaration or continuance of a national emergency.") (internal quotations omitted).[1]

---

[1] The Court also notes that President Bush renewed – on July 18, 2006 – his declaration in Executive Order 13448 that the situation in Liberia constituted a "national emergency."  The Court will not usurp the role of the President in making this determination.

## VI. THE ADMINISTRATIVE RECORD
## SUPPORTS CHICHAKLI'S DESIGNATION

Finally, Chichakli asserts that his designation violated the Administrative Procedure Act ("APA") because it was arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with law. The Court disagrees.

In reviewing an agency determination under the APA, the Court applies a highly deferential "arbitrary and capricious" standard of review. *See HLF*, 333 F.3d at 162. Under this standard, the Court may not undertake its own factfinding; rather, the Court is limited to review of the agency record to determine whether the agency's decision is supported by a rational basis. *Id.*

The administrative record provides ample support for the Chichakli's designation. Substantial evidence in the record reveals that Chichakli held senior level positions in several corporations that OFAC identified as connected to or controlled by Viktor Bout. Furthermore, the record indicates that Chichakli had a close working relationship with Bout and had substantial knowledge of Bout's business. OFAC therefore had a reasonable basis for believing that Chichakli acted for or on behalf of Bout.[2]

---

[2]Chichakli challenges the reasonableness of OFAC's determination by arguing that OFAC relied on hearsay evidence to reach its conclusion. This argument is unavailing. "[I]t is clear that the government may decide to designate an entity [or person] based on a broad range of evidence, including intelligence data and hearsay declarations." *HLF*, 333 F.3d at 162.

ORDER – PAGE 10

## CONCLUSION

The Court concludes that each of Chichakli's claims fails; therefore, the Court grants the Government's motion to dismiss and for summary judgment.

Signed June 4, 2007.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 11